IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 21, 2015

**RODERICK D. TATE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 100181     Steve W. Sword, Judge**

_____

**No. E2014-02153-CCA-R3-PC – Filed September 3, 2015**

_____

The Petitioner, Roderick D. Tate, appeals from the denial of post-conviction relief by the Criminal Court for Knox County.  Pursuant to a plea agreement, the Petitioner entered guilty pleas to six drug-related offenses, for which he received an effective twenty-one-year sentence.  On appeal, he argues that he received the ineffective assistance of counsel in relation to his guilty pleas because counsel misinformed him regarding the applicable range of punishment.  Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROGER A. PAGE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the Defendant-Appellant, Roderick D. Tate.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charme Allen, District Attorney General; and Philip Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On January 25, 2011, the Knox County Grand Jury returned a fourteen-count indictment in case number 96378 charging the Petitioner with several drug-related offenses.  On January 13, 2012, the Petitioner entered guilty pleas to sale of less than .5 grams of cocaine, a Class C felony; sale of .5 grams or more of cocaine, a Class B felony; sale of dihydrocodeinone, a Class D felony; and two counts of sale of .5 grams or more of cocaine within 1000 feet of a preschool, Class B felonies.  The State dismissed the remaining nine counts of the indictment.  The Petitioner also entered a guilty plea in case

number 92685 to possession of .5 grams or more of cocaine with the intent to sell, a Class B felony.[1] Pursuant to the plea agreement, the Petitioner received the following sentences:

| CASE NUMBER | CONVICTION | SENTENCE |
| --- | --- | --- |
| 96378 (Count 1) | Sale of less than .5 grams of cocaine | 3 years at 30% |
| 96378 (Count 3) | Sale of .5 grams or more of cocaine | 8 years at 30% |
| 96378 (Count 5) | Sale of dihydrocodeinone | 2 years at 30% |
| 96378 (Count 7) | Sale of .5 grams or more of cocaine within 1000 feet of a preschool | 12 years at 100%[2] |
| 96378 (Count 11) | Sale of .5 grams or more of cocaine within 1000 feet of a preschool | 12 years at 100% |
| 92685 (Count 1) | Possession of .5 grams or more of cocaine with the intent to sell | 9 years at 30% |

The trial court ordered all counts in case number 96378 to run concurrently with each other. The court further ordered case number 92685 to run consecutively to case number 96378, for an effective sentence of twenty-one years in the Department of Correction.

At the January 13, 2012 guilty plea hearing, the State recited the factual basis for the Petitioner's pleas:

Case Number 96378:

[C]ount 1, on February 9th, 2010, officers with the organized crime unit utilized a confidential informant to make a purchase of cocaine from [the Petitioner]. This informant was equipped with a recording device and provided $60 in government funds and made contact with [the Petitioner] at

---

[1] The plea agreement, judgment forms, and indictment in case number 92685 are not included in the record on appeal. We glean the information about the Petitioner's guilty pleas from the transcript of the January 13, 2012 guilty plea hearing.

[2] A defendant convicted of selling .5 grams or more of cocaine within 1,000 feet of a childcare center is required to serve "at least the minimum sentence for [his] appropriate range" at 100%. T.C.A. § 39-17- 432 (c).

4524 Rutledge Pike, a Citgo Service Station. At about 5:15 the informant made contact with [the Petitioner], gave him $60, and received a substance alleged to be cocaine. It field-tested positive for the presence of cocaine, and the lab later confirmed the weight to be .3 grams.

And in count 3 of that same presentment, on November 3rd, members of the organized crime unit again utilized a confidential informant to make a purchase of cocaine and dihydrocodeinone from [the Petitioner] at 1417 Cline Street, which was his address on that date. The informant was given $100 in government funds to purchase cocaine. The transaction occurred at 5:30--at 5:30 inside the residence of [the Petitioner]. The informant was equipped with audio/visual recording equipment. The transaction was recorded on videotape--or digitally recorded video, and [the Petitioner] gave a substance represented to be cocaine in exchange for a hundred dollars. It turned out to be .9 grams of cocaine.

Also on that same date, as it relates to count 5, the codefendant, at [the Petitioner]'s urging, sold seven dihydrocodeinone pills to that same informant at that same time at that same location, 1417 Cline Street.

In count 7, the proof would show that on November 16th, 2010, members of the organized crime unit utilized a confidential informant to make contact with [the Petitioner] at 322 Merchants Drive, that being the McDonald's at 322 Merchants Drive. The informant got in the car with [the Petitioner]. They rode around to another part of the city, came back to the McDonald's, at the--in the McDonald's parking lot, the informant gave [the Petitioner] $150 in exchange for a substance represented to be cocaine. It field-tested positive for cocaine. The lab confirmed the weight to be 1.3 grams. This occurred at approximately four o'clock in the afternoon, and it was within one thousand feet of Wallace Memorial Preschool.

And in count 11, on December 6, 2010, members of the organized crime unit again utilized a confidential informant to make contact with [the Petitioner], this time at the Burger King at 319 Merchants Drive. The informant was given $180 to purchase cocaine from [the Petitioner]. He made contact there at the Burger King parking lot and gave him that amount of money and received a substance represented to be cocaine. It field-tested positive for the presence of cocaine, and the lab confirmed the weight to be 1.9 grams. These--all these transactions were recorded on audio equipment and video equipment as well.

Case Number 92685:

> [P]roof would show that on March 26, 2008, members of the organized crime unit executed a state search warrant at 2724 East Magnolia, being the residence of [the Petitioner] at that time. The search of the premises revealed a substance appearing to be cocaine. It field-tested positive for cocaine. The lab confirmed the weight to be 1.2 grams packaged in a manner consistent with resale. [The Petitioner] also had approximately $6500 on his person in denominations consistent with resale of narcotics.
>
> All these events and all these counts, all these cases took place here in Knox County.

During the guilty plea colloquy, the Petitioner said he understood the agreed-upon sentence to be a total of twenty-one years, with twelve years at 100 percent and nine years at 30 percent. He further understood that he would be eligible for parole after serving fifteen years. The Petitioner acknowledged that he was waiving constitutional rights by pleading guilty and that he was entering his pleas freely, voluntarily, and knowingly, because he was, in fact, guilty. In addition, the Petitioner stated that he was satisfied with his counsel's representation and that he did not have any questions for the court. The trial court accepted the Petitioner's guilty pleas and sentenced him pursuant to the negotiated plea agreement. Although the plea deadline had passed, the court noted that the agreement would serve the interests of judicial economy by resolving the need for five separate trials. The court also granted defense counsel's motion to strike the various trial dates from the court's calendar.

On August 27, 2012, the Petitioner filed a timely pro se petition for post-conviction relief alleging that his guilty pleas were involuntary, that he was denied effective assistance of counsel, and that he was actually innocent of the charge in case number 92685. Post-conviction counsel was appointed, and an amended petition was filed on December 3, 2013, in which the Petitioner alleged that counsel was deficient for failing to properly advise the Petitioner regarding sentencing in case number 96378. The post-conviction hearing occurred on September 19, 2014.[3]

---

[3] On appeal, the Petitioner raised the sole issue of ineffective assistance of counsel regarding the Petitioner's decision to plead guilty. Accordingly, we only address testimony from the hearing relevant to this issue. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

**Post-Conviction Hearing.** The Petitioner testified that counsel was appointed to represent him in 2009 in case number 92685. He said that counsel had also represented him in an unrelated case in which he was acquitted of animal cruelty. He stated that he wanted to go to trial in the instant cases because the only evidence he saw was "four films" that counsel showed him. The Petitioner said that none of the videos depicted him selling anything, and he denied seeing any laboratory reports or other discovery materials. He told counsel that he "d[id] not sell drugs, period." He acknowledged that "there was a transaction" in one of the recordings but stated that "you don't know who sold what and what was sold." The Petitioner insisted that he could "beat" his charges but counsel advised him "to take all the charges."

The Petitioner said that in December 2011, counsel visited him at the Knox County Sheriff's Detention Facility to discuss a possible plea offer from the State. A copy of counsel's December 4, 2011 letter to the Petitioner was entered into evidence without objection. The letter first explained that the Petitioner was charged in case number 92685 with sale of Schedule II in a drug-free school zone and that he was also charged with several drug sales in case number 96738. Because the Petitioner was on bond in one case when the other charges occurred, he was required to serve his sentences in both cases consecutively. The letter further noted that based on his two prior convictions, the Petitioner would be sentenced as a Range I, standard offender for a Class A felony and a Range II, multiple offender for a Class B felony. Next, the letter included a chart of all the Petitioner's charges as well as his possible sentences if convicted.[4] Assuming that the Petitioner was sentenced concurrently in each case, with both cases aligned consecutively, he was subject to a minimum punishment of thirty years at 100 percent and a maximum sentence of fifty years at 100 percent.[5] As a plea deal, the State offered the Petitioner the opportunity to plead to a non-school zone drug offense in case number 92685 for a sentence of eight years at 35 percent. In case number 96738, the Petitioner could agree to a sentence of twelve years at 100 percent. In the letter, counsel advised the Petitioner that the effective twenty-year sentence was a "good offer." Counsel concluded that the Petitioner would receive a "much higher" sentence if convicted at trial.

The Petitioner testified that he understood that in case number 92685, the mandatory minimum sentence for a school zone offender was fifteen years at 100 percent. However, he said that counsel incorrectly advised him that he would serve the

---

[4] According to the chart, the Petitioner was charged with a total of eighteen counts in two indictments, and he faced the possibility of ten separate convictions.

[5] Counsel apparently arrived at this calculation because in both cases, 96378 and 92685, the Petitioner was charged with the sale/delivery of more than .5 grams of cocaine within 1000 feet of a school zone, and a conviction carried the potential sentence of fifteen to twenty-five years at 100 percent.

maximum sentence of twenty-five years at 100 percent. With regard to counts 7 and 8 in case number 96378, he said that counsel incorrectly listed the possible punishment of fifteen to twenty-five years for a school zone offender when the Petitioner was actually a preschool zone offender.[6] The Petitioner stated that "every last count" on counsel's chart of potential punishments was wrong. He stated that he trusted counsel and that he relied on counsel's erroneous advice regarding punishments when he accepted the State's plea deal. The Petitioner said that the possibility of going to trial and receiving thirty to fifty years at 100 percent "scared the crap" out of him. He stated that counsel told him to accept the plea offer. He claimed to have expressed his reluctance to counsel because he maintained his innocence and did not understand why he should plead guilty. According to the Petitioner, counsel did not advise him of his right to withdraw his plea until after the guilty plea hearing. He said he signed the plea agreement without reading it or discussing the waiver of his rights with counsel. The Petitioner said that once he was incarcerated, other inmates told him that he should have gone to trial instead of taking the plea. After he studied his convictions and the possible sentences, he realized that counsel had been mistaken.

The Petitioner opined that counsel was ineffective for providing "outrageous advice" regarding a potential sentence of fifty years at 100 percent and for advising him to plead when he was actually innocent. He said he accepted the plea because he would be eligible for parole after serving fifteen years. He stated that counsel told him, "Just say yes to the questions coming from the judge[.]" The Petitioner claimed that he did not understand anything during the guilty plea hearing apart from the fact that he would be eligible for release after fifteen years. He said he was prejudiced because he would have only received a twelve-year sentence at 100 percent in case number 96378 if he had lost at trial.

On cross-examination, the Petitioner acknowledged that he had previously pled guilty to aggravated assault in 1997 and to statutory rape in 2009. He said he entered guilty pleas because his attorneys told him to do so. He conceded that as a preschool zone offender, he was subject to a mandatory minimum of twelve years at 100 percent. However, he disagreed that he faced a total mandatory minimum of twenty-seven years at 100 percent in both cases. The Petitioner denied that counsel ever reviewed the plea agreement with him on the day of the plea hearing. He stated that "[he] was mad because [counsel] knew that [he] was totally innocent" and that he did not know why he was "taking all these charges [.]" The Petitioner said he did not understand the guilty plea colloquy with the trial court and maintained that he merely said "yes" and "wasn't listening." He stated that all he knew was that he was entering a plea agreement to

---

[6] Pursuant to the Drug-Free School Zone Act, subsection (b)(3) specifically exempts offenders within 1000 feet of a preschool from receiving incarceration at the higher classification in subsection (b)(1). See T.C.A. § 39-17-432(b)(1), (2).

twelve years as a Range II offender at 100 percent and nine years at 30 percent, to be served consecutively. He said that what he pled to "was wrong."

Counsel testified that he successfully represented the Petitioner in a jury trial and that the Petitioner wanted him to continue his representation in the instant cases. He said he met with the Petitioner at least six times at his office and at the Knox County Sheriff's Detention Facility. Counsel stated that they would typically meet for an hour, though meetings were longer if they reviewed the video and audio evidence. He said that throughout his representation, he and the Petitioner discussed the strengths and weaknesses of the State's cases. He agreed that the Petitioner was "fairly consistent" in maintaining his innocence. Counsel advised the Petitioner that they could win one or two of the charges, but the four video recordings would definitely lead to convictions. He further opined that the punishment received after trial would be worse that what was offered under the plea. Counsel could not recall what was depicted in the videos because he had not reviewed them since 2011. Based on his notes, he said that the Petitioner was visible in a video from November 3, 2010, though he conceded that the recordings did not directly show the Petitioner exchanging drugs or money. Counsel did not believe that the Petitioner had much of a defense in the drug cases.

Counsel testified that he had many conversations with the State and with the Petitioner regarding acceptable plea agreements. Specifically, he and the Petitioner had detailed discussions about the different sentencing ranges and the resulting punishments. He stated that the Petitioner wanted to avoid sentences that would be served at 100 percent. Counsel explained to the Petitioner that he should consider sentences at the high end of the applicable range to require 100 percent service despite the possibility of good time eligibility. He also explained that the trial court had the discretion to align sentences concurrently or consecutively and that concurrent sentencing was not a guarantee. At the time, counsel incorrectly believed that all drug-free zone charges would result in enhanced punishment. He later understood that there was a distinction between school and daycare zones. He stated that "it was a little complicated" to create the chart of estimated punishments because the Petitioner had different indictments that charged different offense dates. Counsel recalled that the charge in case number 92685 carried a fifteen-year minimum sentence because the offense occurred within 1000 feet of Austin-East High School. He further stated that the charges near Merchants Drive in case number 96378 occurred near a daycare. He agreed that if convicted at trial in both cases, the Petitioner's "best-case scenario" was an effective twenty-seven-year sentence at 100 percent. He also agreed that the Petitioner could have received consecutive sentencing within case number 96378 if convicted at trial.

Counsel said he met with the Petitioner at the detention facility on December 4, 2011, to discuss the State's plea offer and to hand-deliver his letter outlining the deal.

Counsel's handwritten notes reflected that the Petitioner accepted the effective twenty-year sentence, but he wanted to postpone the plea as much as possible. He subsequently met with the Petitioner on December 14, 2011, and recommended that the Petitioner should take the State's offer. According to the notes from that meeting, the Petitioner did not want the offer, and he wanted to hire another attorney. However, the Petitioner later changed his mind. Counsel's notes further reflected that: a trial for counts 7 through 10 in case number 96378 was scheduled for February 1, 2012; counts 1 and 2 were set for June 18, 2012; and case number 92685 was set for July 9, 2012.

Counsel testified that after the Petitioner changed his mind and rejected the twenty-year offer, the deadline for plea negotiations had passed. He recalled that the final offer was adjusted upward by one year as a consequence. When asked why the Petitioner agreed to the twenty-one-year sentence, counsel responded:

> Well, he didn't want to go to trial. He didn't want to take the risk of going to trial, and he asked me if I could get the plea offer back, and I explained to him that we cannot get the plea offer back. We are past the plea deadline, but that I would talk to [the prosecutor], and see if there was some way that we could resolve the case. I knew we had the discussion about ways to resolve the case, and we came to the conclusion that we can't have the same offer, but I'll give you this, and I think my advice to him was, you wanted an offer. This is--you should understand by now this is not getting better.

Counsel's notes reflected that he met with the Petitioner on January 8, 2012, and on the day of the plea hearing on January 13, 2012. He testified that he reviewed the plea agreement with the Petitioner "page by page" on the day of the hearing, and he went over the provisions in the same manner as the trial court would. He said that the Petitioner appeared to be in his right mind and that he would not have continued with the plea process if there was something wrong with the Petitioner. Counsel stated that he "ha[d] no doubt" that the Petitioner was aware of what he was doing and of the consequences of his plea.

After the hearing, the post-conviction court took the matter under advisement and entered a written order denying relief on October 24, 2014. In its order, the court concluded that "[a]lthough plea counsel's advice was not totally correct regarding potential minimum sentences, the Petitioner has failed to show that his attorney's deficiency prejudiced the Petitioner. The outcome of the case is entitled to confidence." The Petitioner timely appealed the post-conviction court's order.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel based on counsel's incorrect advice regarding the applicable minimum and maximum sentences that he could receive upon conviction.[7] The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish prejudice based on counsel's misstatement of the sentencing range. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order

---

[7] In his petition for post-conviction relief, the Petitioner also alleged that his guilty plea was unknowing and involuntary. Because he did not raise this claim in his brief to this court, we do not address it on appeal.

or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

To establish deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). To establish prejudice arising therefrom, the petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 116 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Here, the Petitioner asserts that he would have insisted on going to trial but for counsel's erroneous advice regarding the range of punishment for his charges. In its written order denying relief, the post-conviction court specifically held that the Petitioner failed to establish prejudice:

> Based upon his own testimony, the Petitioner clearly was most interested in receiving the shortest length of time to serve as possible. He rejected a previous offer and then changed his mind. The State refused to extend the same offer and added a year onto the consecutive count. The Petitioner's acceptance of this longer sentence indicates that he clearly did not want to go to trial on this case. He received the minimum sentence possible on the school zone case and just one year above the minimum on the consecutive case. He was allowed to plead to two B felonies when he was facing multiple B felony offenses and an A felony. The Petitioner received the bargain he sought. If the Petitioner had been correctly advised as to the minimum sentence and sentencing rate on the charges he faced, the post-conviction court believes the Petitioner would have still accepted the offered settlement. Thus, the Petitioner has not established that he was prejudiced by any deficient performance by his attorney.

In reaching its conclusion, the court found that counsel incorrectly advised the Petitioner in the preschool zone case. The court noted that as a Range II offender with a Class B felony, the Petitioner was actually subject to a minimum possible sentence of twelve years at 100 percent and a maximum sentence of twenty years, rather than a range of fifteen to twenty-five years at 100 percent. Therefore, the minimum sentence for both

cases would have been twenty-seven years at 100 percent and not thirty years at 100 percent. The court concluded that counsel's three-year error in this regard constituted deficient performance.

The court found that, despite the misstatement regarding the minimum sentence, counsel participated in extensive plea negotiations and frequently met with the Petitioner to discuss the merits of the cases and the potential sentences. It also found that counsel advised the Petitioner that the State's evidence against him was strong based on the presence of videos and confidential informants. The court noted that if the sentences in all five separate offenses were aligned consecutively, the Petitioner's maximum potential punishment could have been ninety-three years, with thirty-nine years to be served at 100 percent.[8] The court further found that "[t]he Petitioner's minimum sentence, if convicted of all offenses[,] would vary depending upon the court's order." It accredited the Petitioner's admission that he pled guilty to avoid a fifty-year sentence and opined that the Petitioner would have received a greater sentence if convicted on all counts at trial. The court also accredited the Petitioner's testimony at the guilty plea hearing that he was in fact guilty of the offenses.

We conclude that the record fully supports the findings and conclusions of the post-conviction court. At the evidentiary hearing, the Petitioner repeatedly testified that he was "scared" of the possibility of a fifty-year sentence. He said he accepted the plea agreement because he would be parole-eligible after serving fifteen years. Counsel testified that he and the Petitioner had detailed discussions about the sentencing ranges and the potential punishments. He opined that the Petitioner did not have a strong defense because the State had video evidence of the drug transactions. Counsel acknowledged that he misstated the sentencing range for a preschool zone offender, though he agreed that the Petitioner's "best-case scenario" was a total effective sentence of twenty-seven years at 100 percent. He testified that the Petitioner wanted to plead guilty to avoid the possibility of sentences requiring service at 100 percent and to avoid the risk of trial. Counsel said he went "back and forth" during plea negotiations with the State and the Petitioner to reach an acceptable resolution for the two cases. On the day of the plea hearing, counsel said he reviewed the plea agreement "page by page" with the Petitioner, and he had no doubt that the Petitioner understood the plea and was aware of the consequences. Counsel further testified that the Petitioner had missed the plea deadline and that he had three trials scheduled at that time.

---

[8] Assuming that the trial court imposed the maximum sentence in the appropriate range and aligned the offenses consecutively, the ninety-three-year sentence is the sum of the following: twenty years at 35 percent (count 3 in case number 96378); eight years at 35 percent (count 5); twenty years at 100 percent (count 7); twenty years at 100 percent (count 11); and twenty-five years at 100 percent (count 1 in case number 92685).

The transcript of the guilty plea hearing reflects that during the plea colloquy, the Petitioner advised the trial court that he wanted to accept the plea agreement "[a]s long as it's 12 at a hundred, and nine--nine years at 30 percent[.]"  The trial court accepted the plea agreement despite the expiration of the plea deadline because the plea would resolve the need for five separate trials.  As a result of the agreement, the Petitioner entered a guilty plea to a Class B felony in a non-school zone in case number 92685, even though he was charged with a Class A felony that occurred within a school zone.  At the time of his January 13, 2012 guilty plea hearing, the Petitioner's first trial was scheduled for February 1, 2012.  After the court accepted the Petitioner's guilty plea, all pending trial dates were stricken from the court's calendar.  Although the Petitioner asserts that he could have "beat" his charges, we note that he faced the possibility of an effective ninety-three-year sentence if convicted on all counts at trial.  Apart from his own testimony, the Petitioner did not present any proof at the evidentiary hearing to support the claim that he would have insisted on going to trial if counsel had correctly advised him of the potential twenty-seven-year sentence.  As such, the record does not preponderate against the post-conviction court's finding that "the Petitioner's primary reason for pleading guilty was to avoid a potentially greater sentence."  We note that credibility determinations are properly resolved by the trial court, and we will not reweigh or reevaluate the evidence on appeal.  Vaughn, 202 S.W.3d at 115.  Based on the record, the Petitioner has failed to demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Accordingly, we conclude that the post-conviction court properly denied relief.

## CONCLUSION

Based on the foregoing authorities and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE